United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 97-1650
_____

United States of America,            *
                                      *
        Plaintiff - Appellee,         *
                                      *   Appeal from the United States
v.                                    *   District Court for the
                                      *   Northern District of Iowa.
Michael Franklin Einfeldt,            *
                                      *
                                      *
        Defendant - Appellant.        *

_____

Submitted: October 21, 1997
   Filed:  March 6, 1998
_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.
_____

LOKEN, Circuit Judge

        Michael Einfeldt appeals his conviction and sentence for armed robbery of a
Waterloo, Iowa, food store and for conspiracy to violate the Hobbs Act, 18 U.S.C. §
1951. On appeal, Einfeldt argues (1) the district court[1] committed evidentiary errors
by requiring Einfeldt to stipulate to one or more felony convictions for purposes of 18
U.S.C. § 922(g), by allowing the government to impeach him with a prior robbery

_____

        [1]The HONORABLE MICHAEL J. MELLOY, Chief Judge of the United States
District Court for the Northern District of Iowa.

conviction, by admitting co-conspirator hearsay, and by limiting cross exam of a government witness about prison misconduct; (2) the court deprived Einfeldt of due process by refusing to exclude testimony because related evidence had been destroyed by the Des Moines police and by failing to grant him a continuance, and the government denied him due process by failing to disclose that one of its witnesses was a paid informant; (3) the court erred in sentencing Einfeldt as an armed career criminal; (4) the court violated his Sixth Amendment rights by limiting the role of standby counsel; (5) the court erred in failing to give an interested witness instruction; (6) the Hobbs Act is unconstitutional; and (7) the court's Jury Selection Plan violates the Sixth Amendment and the Jury Service and Selection Act. As Einfeldt does not challenge the sufficiency of the government's evidence, we will recount only the facts necessary to discuss these issues. Additional background may be found in United States v. Farmer, 73 F.3d 836 (8th Cir. 1996), affirming the conviction and sentence of one of Einfeldt's conspirators. We likewise affirm Einfeldt's conviction and sentence.

## I. The Challenged Evidentiary Rulings.

A. *Use of Prior convictions.* Before trial, Einfeldt offered to stipulate that he is a convicted felon for purposes of § 922(g)(1). At that time, Old Chief v. United States, 117 S. Ct. 644 (1997), was pending but not decided. The district court agreed to order the government to stipulate, provided the stipulation said that Einfeldt had been convicted of "one or more felony offenses" to avoid misleading the jury into believing he had only one prior conviction. Einfeldt accepted that condition but now argues that this stipulation created unfair prejudice under Old Chief. Even assuming the issue was properly preserved, we disagree. The decision in Old Chief was premised upon the prejudice resulting when a prior conviction is described to the jury, instead of giving the jury a stipulation reciting the fact of conviction. Here, on the other hand, the district court's concern was to fashion a stipulation that did not mislead the jury as to Einfeldt's criminal history. The touchstone of Federal Rule of Evidence 403 is *unfair* prejudice, and there was nothing unfair about the court's form of stipulation.

Einfeldt also argues the district court erred in allowing the government to impeach his trial testimony with a 1974 bank robbery conviction. He raised this issue by a motion in limine that was denied. He then admitted the prior conviction during his direct examination at trial. That tactic precludes review of the issue on appeal. See United States v. Warren, 16 F.3d 247, 253-54 (8th Cir. 1994); United States v. Brown, 956 F.2d 782, 787 (8th Cir. 1992).

*B. Use of Conspirator Hearsay.* During the government's case in chief, the district court conditionally allowed informant Ben White to testify to statements made by alleged conspirator Thomas Farmer about Einfeldt's participation in a prior food store robbery in Des Moines, and in planning to rob another Des Moines store. We approved this procedure for managing the order of proof in a conspiracy trial in United States v. Bell, 573 F.2d 1040, 1044 (8th Cir.1978). At the close of trial, the district court admitted this testimony under Fed. R. Evid. 801(d)(2)(E), finding the government had proved by a preponderance of the evidence that a conspiracy existed, Einfeldt and Farmer were members of the conspiracy, and Farmer's statements were made during the course and in furtherance of the conspiracy. See Bourjaily v. United States, 483 U.S. 171, 175-76 (1987).

Einfeldt argues on appeal that the court erred in admitting this testimony because the government failed to prove that Einfeldt was a member of a conspiracy to rob the Des Moines store. But the testimony of White (which may be considered in making the Rule 801(d)(2)(E) determination, see Bourjaily, 483 U.S. at 181), conspirator Reggie Williams, and Orlando Proctor, who testified he was approached about joining the conspiracy, provided ample evidence that Einfeldt was a member of an on-going conspiracy. The district court's findings to that effect were not clearly erroneous. See United States v. Edwards, 994 F.2d 417, 421 (8th Cir. 1993) (standard of review), cert. denied, 510 U.S. 1048 (1994).

*C. Excluded Impeachment of a Government Witness.* Michael Williams was a limited participant in the Waterloo robbery who testified under a grant of immunity that Einfeldt planned the robbery and admitted taking part in it. Though thrice convicted of armed robbery, Williams testified on redirect that he had turned his life around -- "the last time I committed a crime, you know, that was in [19]79." Einfeldt then proposed to question Williams on recross about the details of his prison violations after 1979, which included assaulting a guard in 1988, threatening a residence adviser in 1992, and a parole revocation. The district court ruled that Einfeldt could ask generally about prison violations and parole revocation to impeach Williams's testimony that he had become a model citizen, but could not go "into the specifics of those incidents." Einfeldt then cross-examined Williams but did not ask the impeachment questions the court had said it would permit. He now argues on appeal that he should have been allowed to cross-examine on the details of Williams's prison record. We doubt this issue is properly preserved. But in any event, we conclude the district court permitted "substantial and extensive cross-examination and impeachment" and did not abuse its considerable discretion to limit the scope and extent of cross-examination. United States v. Headid, 565 F.2d 1029, 1031 (8th Cir. 1977).

## II. Due Process Issues.

Before trial, Einfeldt moved to exclude evidence concerning the prior food store robbery in Des Moines, and the planning of another robbery. He argued that testimony about these incidents would violate his due process rights because Des Moines police had destroyed three pieces of evidence relevant to them: a videotape showing two suspects and a car near the site of the first robbery, a log listing the names of 200 suspects whose photographs were shown to a witness of that robbery, and a written log and audio tapes of witness Ben White's attempts to call Farmer and Einfeldt about planning the second robbery. After the district court denied this motion, Einfeldt failed to preserve the issue for appeal when he did not object to the government's evidence at trial. In any event, the motion to exclude was properly denied. "[U]nless a criminal

-4-

defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988); see United States v. Weise, 89 F.3d 502, 504 (8th Cir. 1996). We agree with the district court that the missing evidence was of minimal relevance, that the police had reasonable explanations why each item was destroyed (or never created), and therefore that there is no evidence of bad faith. The court did not abuse its discretion in denying a continuance because the government confirmed the destruction of this evidence only a week before trial. See United States v. Lefkowitz, 125 F.3d 608, 620 (8th Cir. 1997) ("continuances are not favored and should be granted only when a compelling reason has been shown").

Einfeldt next argues the government violated his due process rights under Brady v. Maryland, 373 U.S. 83, 87 (1963), when it failed to notify him before trial that witness Ben White was a paid informant. However, this information came out at trial during the direct, cross, redirect, and recross examination of White, and the redirect examination of Officer Steverson. "Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, Brady is not violated." United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996).

### III. Sentencing as an Armed Career Criminal.

The Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), provides that any defendant convicted of being a felon in possession of a firearm is subject to a minimum fifteen years in prison if he has three prior convictions for "a violent felony or a serious drug offense." Einfeldt argues that it was error to sentence him as an armed career criminal because one of his three predicate convictions, based on a plea of guilty to a 1967 Arkansas burglary, was not a "violent felony." We disagree.

The Act defines "violent felony" to include "burglary." See 18 U.S.C. § 924(e)(2)(B)(ii). "Burglary" for this purpose is "any crime . . . having the basic

elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599 (1990). The Arkansas statute to which Einfeldt pleaded guilty in 1968 included activities falling outside Taylor's generic definition of burglary, such as breaking into railroad cars, automobiles, airplanes, boats, vessels, and water crafts. See Ark. Crim. Code § 41-1001 (1947). In this situation, the district court must look to the charging document or the text of Einfeldt's guilty plea to determine if the conviction was for generic burglary and is therefore a predicate Armed Career Criminal Act offense. See United States v. Demint, 74 F.3d 876, 877 (8th Cir.) (per curiam), cert. denied, 117 S. Ct. 364 (1996).

The Information in question charged Einfeldt with committing burglary and grand larceny on December 20, 1967. Count I alleged that he did

> Feloniously, burglariously and forcibly break and enter the Mad Butcher located at 417 North Cedar Street, Pine Bluff, Arkansas, there situate, with the felonious intent to commit larceny . . . .

Although this allegation left a question whether the Mad Butcher was a building or structure that satisfies the Taylor test for generic burglary, Count II eliminated any possible ambiguity by alleging that Einfeldt stole "groceries, cigarettes and trading stamps" from "The Mad Butcher Store." We reject Einfeldt's contention that Count II may not be considered because it was dismissed as part of his plea agreement. The issue is whether the charging document as a whole "show[s] that the defendant was charged only with a burglary of a building." Taylor, 495 U.S. at 602. Thus, the district court correctly sentenced Einfeldt as an armed career criminal.

## IV. The Standby Counsel Issue.

Einfeldt chose to represent himself at trial, but requested standby counsel to help him with technical aspects of the trial such as objections. The district court allowed

standby counsel to be present but directed that counsel not speak during the government's case-in-chief. Before the second day of trial, standby counsel asked permission to make objections for Einfeldt. After confirming that Einfeldt still wanted to otherwise represent himself, the court granted this request. Einfeldt argues on appeal that he was denied the kind of "hybrid" representation he requested, and this violated his Sixth Amendment right to counsel under Faretta v. California, 422 U.S. 806, 835-36 (1975). This contention is without merit. There is no constitutional right to hybrid representation; it is available at the district court's discretion. See United States v. Swinney, 970 F.2d 494, 498 (8th Cir.), cert. denied, 506 U.S. 1011 (1992); United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir. 1989), cert. denied, 494 U.S. 1005 (1990). The district court made a commendable effort to honor Einfeldt's decision to represent himself while providing him meaningful assistance of standby counsel. The resulting arrangement was clearly no abuse of the court's discretion. "A defendant does not have a constitutional right to choreograph special appearances by counsel." McKaskle v. Wiggins, 465 U.S. 168, 183 (1984).

## V. Denial of an Interested Witness Instruction.

The district court gave an instruction, taken from Eighth Circuit Model Instructions 4.04-4.06, advising the jury to give the testimony of informants, accomplices, and witnesses who were granted immunity such weight as the jurors thought these witnesses deserved. Einfeldt argues the court erred in denying his request for an instruction directing the jury to consider such testimony with greater caution and care than that of other witnesses. However, this cautionary instruction is not required if the testimony of such witnesses was corroborated by additional evidence. See United States v. Gibson, 105 F.3d 1229, 1233 (8th Cir. 1997); United States v. Drews, 877 F.2d 10, 12-13 (8th Cir. 1989). As there was substantial corroborating evidence in this case, the court did not abuse its discretion.

## VI.  Hobbs Act Constitutionality.

Einfeldt argues that the Hobbs Act is unconstitutional on its face because it is beyond the scope of Congress's Commerce Clause powers, and unconstitutional as applied because the Waterloo robbery had no effect on interstate commerce.  These arguments are foreclosed by our decision in United States v. Farmer, 73 F.3d 836, 843-44 (8th Cir.), cert. denied, 116 S. Ct. 2570 (1996); see also United States v. Green, 350 U.S. 415, 420-21 (1956).

## VII.  The Jury Selection Procedure.

Einfeldt's jury pool was selected from voter registration lists, consistent with the Northern District of Iowa's Jury Selection Plan at the time of his trial (an amended plan has since been adopted that uses lists of registered voters, actual voters, and motor vehicle operators).  Einfeldt argues that this method of juror selection under-represented African-Americans, thereby violating The Jury Selection and Service Act, 28 U.S.C. §§ 1861 *et seq.*, and his Sixth Amendment rights.  This contention is foreclosed by our decisions in United States v. Garcia, 991 F.2d 489, 491-92 (8th Cir. 1993), and Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.